FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. Sec. 1983

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 2 4 2005

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
~~JEFFERSON~~ COUNTY DIVISION
(LINCOLN)
MAIL TO: US COURTHOUSE 600 W. CAPITOL AVE.
LITTLE ROCK, AR 72201-3325

(Courts Copy)

Brunson Roberts _____

_____

_____

ADC # *127841*_____

(Enter above the full name of the
plaintiff, or plaintiffs, in this
action.)

V.

CASE NO. *4:05CV00082JMM*

Pulaski County Police Dep. Agencies
N.L.R.P.D., P.C.S., L.R.P.D. Et al. (sued in their individual capacity) N.L.R.P.D. officers
Abott, Schurlst, C. Rhodes. (Thenese Free, P.A. in her individual capacity)

(Enter above the full name of
defendant or defendants, in
this action.)
Previous Lawsuits

This case assigned to District Judge *Moody*
and to Magistrate Judge *Forster*

I.    Previous Lawsuits

A.    Have you begun other lawsuits in state or federal
      court dealing with the same facts involved in this
      action?

      Yes____    No ✓

B.    If your answer to A is yes, describe each lawsuit in
      the space below. (If there is more than one lawsuit,
      describe the additional lawsuits on another piece of
      paper, using the same outline.)

1.    Parties to this lawsuit

      Plaintiffs: _____

      _____

      Defendants: _____

      _____

2.    Court (If federal court, name the district; if state court,
      name the county: _____

      _____

-1-

**2**

3.    Docket Number: _____

4.    Name of Judge to whom case was assigned: _____

5.    Disposition (for    example: Was the case dismissed? was it appealed?  Is it still pending?):    _____

6.    Approximate date of filing lawsuit:  _____

7.    Approximate date of disposition:  _____

II.    Place of present Confinement:  A.D.C. Varner Unit, P.O.Box 600 Grady AR. 71644

III.    There is a prisoner grievance procedure in the Arkansas Department of Correction. **Failure to complete the grievance procedure may affect your case in federal court.**

A.    Did you present the facts relating to your   complaint in the state prisoner grievance procedure?

Yes _____    No ✓

B.    If your answer is YES, Attach copies evidencing completion of **the final step of the grievance appeal** procedure. FAILURE TO ATTACH THE REQUIRED COPIES MAY RESULT **IN THE DISMISSAL OF YOUR COMPLAINT.**

C.    If your answer is NO, explain why not:  Because it was not deal with grievances, this is from the start of my hectic travel to be incarsarated.

IV.    Parties
(In item A below, place your name in the first blank and place your present address in the second blank.    Do the same for additional plaintiffs, if any.)

A.    Name of plaintiff: Brunson Roberts

Address: Varner Unit
P.O.Box 600
Grady AR. 71644

Name of plaintiff: _____

Address:  _____

Name of plaintiff: _____

Address:  _____

-2-

(In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.)

Defendant: NAME: Schwulst

Position : N.L.R. officer of patrol

Place of employment: North Little Rock Police Department

Address: North Little ~~Rock~~ Rock Police Department 200 W. Pershing NLR. AR 72114

Defendant: NAME: Abott

Position : N.L.R. officer of patrol

Place of employment: North Little Rock Police Department

Address: North Little Rock Police Department 200 W. Pershing NLR. AR. 72114

Defendant: NAME: C. Rhodes

Position : N.L.R. officer of patrol

Place of employment: North Little Rock Police Department

Address: North Little Rock Police Department 200 W. Pershing NLR. AR. 72114

Defendant: NAME: T. Free

Position : Private attorney

Place of employment: Self employed

Address: 1414 S. Scott St. LR. AR. 72202

Defendant: _____

Position : _____

Place of employment: _____

Address: _____

-3-

V.    Statement of Claim

State here as briefly as possible the _facts_ of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)



(SEE Attachments on BACK)

VI.    Relief

State briefly exactly what **YOU want the court to do for** YOU. Make **no legal arguments. Cite no cases or statutes.**



(SEE Attachments)

I declare under penalty of perjury (18 U. S. C. § 1621 that the foregoing is true and correct.

Executed on this 20 day of January ,2005.

Brunson Roberts

Subscribed and Sworn to Before me a Notary Public on this

Date January 20, 2005

3-10-11

My Commission Expires

Signature(s) of plaintiff(s)

NOTARY PUBLIC    -4-

Preliminary Statement.)

This is a civil rights action filed by Brunson L. Roberts, a state prisoner, for damages, declaratory, compensatory, punitive, and injunctive relief under 42. U.S.C. § 1983 + 1985 alleging conspiracy, entrapment, and violations under the RICO Act. By Pulaski County police agencies using a custom of law to illegally search, arrest, imprison and etc. They violated plaintiff's constitutional rights specifically 4, 5, 6, 8, 9, 13, and 14 for malicious longterm imprisonment.

Jurisdiction.)

1.) The court has jurisdiction over the plaintiffs' claims of federal constitutional rights under 42 U.S.C. 1331 and 1343.

2.) The court also has jurisdiction under 42, +28 U.S.C. § 2201 & 2202 & 1367

3.) The court also has jurisdiction under the original laws of the land Leviticus 19:15 Exodus 18:26 & 22 Deuteronomy 19: 15-19 1: 16-17 25:1 16: 18-19

4.) The judge has a vow and an oath to a pledge to the justice of the plaintiff under Numbers 30:2 Exodus 22:9 1 Peter 2:17 Psalms 133 Exodus 28: 38-43

...rties

3.) The plaintiff Brunson Roberts went through the events described in this complaint.

4.) Defendants N.L.R.P.D. P.C.S. L.R.P.D. are all sued collectively under the RICO ACT.

5.) Defendant N.L.R.P.D are sued in their individual capacity.

6.) Defendant Abott N.L.R.P.D. officer is sued in his individual capacity.

7.) Defendant C. Rhodes N.L.R.P.D. officer is sued in his individual capacity.

8.) Defendant Schwulst N.L.R.P.D officer is sued in his individual capacity.

9.) Defendant T. Free P.A. is sued in her individual capacity.

This is a civil rights action filed by Brunson Roberts a state and federal prisoner for damages and injunctive relief under 42 U.S.C. 1983 and 1985 alleging conspiracy to commit under the RICO Act.

1.    Illegal tactics of forced coercion and entrapment to get plaintiff to plead guilty to a one count indictment in federal court.

2.    Falsifying of documents and perjury.

3.    Vindictive Prosecution.

4.    Violation of due process under the 4th and 6th amendment.

5.    Illegal tactics used by N.L.R.P.D., L.R.P.D., P.C.S. to incarcerate plaintiff on a long term prison sentence for drugs out of malice because plaintiff beat previous charges.

6.    Violation of the 14th Amendment of equal protection rights with unfair pretrail procedure dealing with attorney T. Free which was a tactical advantage over plaintiff subjecting plaintiff to unfair trail and sentencing and other cause and effect.

7.    Illegal presentations of docments, ex; Forfeiture in Rem, bench warrants, false warrants for F.T.A., which resulted in illegal searches and seizures, and illegal arrest which violated plaintiff's rights by using a municipal policy that is a usage of law.

8.    Denial of fair trail with defective prejudice against Afro-Americans and the lower class dealing with an indigent and laymen[of law plaintiff.

9.    Discrimination and disparity by courts in Pulaski County Municipal and Circuit with unfair procedure, and schematically working with trial court and

attorneys to bar plaintiff from due process which is a constitutional violation and a conspired act to hold plaintiff from due justice of travel; illegally violating laws of the natural land and violating ethical and judicial policies and procedures which is a constitutional question of law supported by facts and merits to give the higher courts principal purpose underlying § 1983 and § 1985 to provide private and special remedy damage for blacks.  Because the Union Sympathizers and Federal officials oare still at work in the Reconstruction of the South.

10.   Rights of detainee were also violated under the 5th amendment of pretrial detainee also under the 14th and 8th.  The cruel and unusual punishment which is used against plaintiff and others to gain illegal conviction by a prison incarceration for speedy trial violation and also being held in Adseg T and U in PCDF which is isolation units which was physically, emotionally and mentally causing causing ailment, stress, anguish, and other trauma.

11.   Excessive use of force by P.D. officers.  With the using of illegal tactics to incarcerate plaintiff that resulted in other illegal schemes to convict plaintiff of drug charges with illegitimate process of law.

12.   Plaintiff has also been held from filing this complaint earlier, due to T. Free not turning over documentation and Pulaski County Agencies holding paperwork that still has not been obtained.



## FACTS

1. The facts at hand deal with illegal tactics used by Sherwood P.D., Pulaski County Sheriff, Little Rock P.D., and N.L.R.P.D.

2. The issuance of invalid warrants which was subtle to the plaintiff because the plaintiff did not have the paperwork that these police departments were using at the time of the incidents when they were occuring. Because T. Free had the files of the plaintiff's.

3. Shwerwood was the first to use this illegal tactic.

4. Sherwood on the date of April 9, 2000 came to the plaintiff's residence at 114 Marvin St., N.L.R. stating that the plaintiff had warrants for hot checks.

5. Sherwood illegally searched the residents at 114 Marvin.

6. Shwerwood police department called N.L.R.P.D.

7. They conspired together that day and charged Mr. Roberts with a lot of malicious charges.

8. Officer Kilgore and a couple of N.L.R.P.D. officers clearly stated to the plaintiff that this situation will be sending you to the penitentiary for a long time, because you are a drug dealer.

9. I stated to the police that what you did was not under procedure and I'll beat these malicious charges.

10. During my detention I hired T. Free as my attorney. While obtaining the Motion of Discovery she discovered that the warrants were invalid and stale.

11. On September 27, 2001, the State Noll Processed the charges against the plaintiff in 2nd Division Honorable Chris Piazza's Court Room, that the plaintiff was maliciously charged with.

12. This is where the crux and conspiracy to this claim came about.

13. On April 3, 2001 the N.L.R.P.D. charged plaintiff with more malicious drug charges that were done out of spite to Mr. Roberts.

14. On September 10, 2001 represented by Theres Free, the State Nolle Processed the charges in 1st Division the Honorable Marion Humphrey's Courtroom.

15. On November 19, 2001 N.L.R.P.D. maliciously charged Mr. Roberts with three aggravated assaults and a domestic battery.

16. They came to Mr. Roberts residence at 8018 Rains Rd. and arrested Mr. Roberts without an arrest warrant.

17. On December 25, 2001 Pulaski County deputy Haley arrested plaintiff because of a warrant out of Little Rock that has never been produced which entrapped the plaintiff.

18. On April 1, 2002 in 5th Division the prosecutor H. Finkelstein dropped the malicious charges of aggravated assault in return for a guilty plea from the charges that arose from December 25, 2001, which were two counts of Man. Del. Poss. Cont. Sub. For five years probation. I was represented by Therese Free P.A. in the proceedings.

19. On April 17, 2002 the NLRPD Investigators said they working a undercover capacity looking for prostitutes.

20.    But they never arrested anyone but me because of who I was, then they wanted to search me but had no reason.  The officers used a custom of policy to say I had a F.T.A. Warrant out of N.L.R. Municipal Court.

21.    This is the custom and usage that is "so permanent and well settled" as to have force of law by lower level staff acting as policy makers by exercising final authority without supervision.  This is the production of illegal tactics and the falsifying of documents be NLRPD department(s).

22.    Inv. of N.L.R.P.D. are:  B.T. Carmical #3687, K. Jackson #6937, Kersey #4272, Broach #1294 were the ones who initially violated Ar Law.  By putting on the police reports that I had an active outstanding warrant for a misdemeanor.

23.    ~~[illegible redacted text]~~

24.    ~~[illegible redacted text]~~

25.    Det. Hunter knew the plaintiff Mr. Roberts didn't have any warrant.  He was the first on the scene and did not write a police report.  He knew he would be violating the law under the RICO Act.

26.    ~~[illegible redacted text]~~

~~information given him on until he shall be claimed that there are reasonable~~

~~grounds for believing the charge~~.

27.    The officers also took U.S. Currency in the amount of 1,580 dollars from the plaintiff and would not return it through circuit court under a petition to retrieve seized property.  The prosecutor H. Finkelstein out of vindictiveness went to another division to get a default judgment out of malice to the plaintiff. He said he served me papers on the 24, September 2002.  This was impossible because the plaintiff was in MO. County jail in Green County.

28.    I've also tried to retrieve Warrant #37765 through a (F.O.I. Act) AR code Ann. § 25-19-101 & 25-19-107 but met negative results.

29.    ~~Under Rules of Federal Procedure under Rule § 1732 page 7 & 8 b, government records and papers, and copies of books or records account of minutes proceedings of any department or agency of the U.S. shall be admissible to prove the act transaction or occurrences as a memorandum of which the same were made or kept, also under Federal Rules 1746 Evidence Depositions.~~

30.    This is one of the myriads to this claim.

31.    On April 30, 2002 the code officers G. Whitley and T. Wadley said they seen drug activity.  Not in any report did they describe suspicious activity.

32.    Officer Dukes just walked in the yard and said don't move.  He asked to do a pat down search for weapons, I told him you don't any reason to be here.

33.    But what he put on the police report was totally different.  He falsified documents by saying he seen the plaintiff in the driver's seat in a van that was disabled.

34.    ~~Under Rule 12.2 A.C.A. Search and Seizure incidental to arrest, he searched plaintiff and didn't find anything on the plaintiff~~.

35.    But he falsified documents to make the plaintiff look guilty and to make the police reports match his story of the incident which is tampering with federal and state evidence of a crime scene.

36.    He was the only person to write on a police report out of all the police that were at the scene.

37.    ~~Under Rule A.C.A. 12.4 Search of vehicles under rec. (b) the search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable~~.

38.    ~~Under A.C.A. § 16-81-208 Civil liability any officer making a stop or search not in accordance with the laws of this state shall be civilly liable for damages suffered by the person who was unlawfully stopped and searched~~.

39.    Officer Dukes found drugs then arrested Mr. Roberts and the police report shall reflect.

40.    To make sure that Officer Dukes got a conviction on me, he and J. Broach conspired with T.F.O.C. Vereen after we got to the detective's station.

41.    T.F.O. C. Vereen promised me he could make my state charges disappear if I helped him.  He said just for you being by the drugs we will charge

you with conspiracy and it'll stick, cause I know a lot of people in the system of law.

42.    I told T.F.O. Vereer you can't help me get out of my face.

43.    Once he seen that Mr. Roberts knew his rights to remain silent, he left. That's when they transported me to N.L.R. intake then to P.C.D.F.

44.    In the process of bonding out; P.C.. issued a F.T.A. appear warrant the next as I was bonding out.

45.    This is the corpus delecti, and the conspiracy schematically being used by all the branches of police in Pulaski County District to justify illegal search and seizures.

46.    On May 8, 2002, N.L.R.P.D. officer Gorea and code enforcement officer Nolan came to 205 Emily because they said they had a court order to vacate the premises.

47.    I told N.L.R.P.D. Officer Gorea that this is not my house I'm just visiting.  That's when code enforcement officer Nolan asked me to produce my I.D.  I replied I didn't have my I.D. and if I did you wouldn't get cause I haven't done anything.

48.    That's when officer Gorea of the N.L.R.P.D. said you're under arrest.  I laughed and said for what, that's when officer Gorea said before all this is over, you are gonna learn that police do what they wanna do.

49.    He arrested me for obstructing governmental operations and disorderly conduct.  Officer Gorea of N.L.R.P.D. issued me a citation to appear in court at N.L.R. Municipal Courthouse on June 14, 2002 at 0800 hours.

50.    On May 18, 2002 ten days later Mr. Roberts was coming home from work when he was stopped and searched by N.L.R.P.D. officer Schwulst on Bethany St. He said look who it is, once he seen my face, he asked Mr. Roberts to step out the truck. He did a pat down search of my garments and found nothing. He asked the plaintiff where are the drugs. I laughed and replied, I just got off work look at all the wood on the bed of the truck.

51.    Officer Schwulst asked to search the truck, that's when I told Officer Schwulst you only got 15-minutes to hold me up, no you can't search my truck, search it for what. That's when he said you must got something, I'm gonna search that truck no matter what you say. He went to the door of his car and yelled to me, sit tight I'll be right with you.

52.    He came back to the truck and said you have a warrant out of N.L.R. I told him that I didn't have a warrant because I just left the court house two weeks ago.

53.    He said step out the vehicle you're under arrest. I complied and stepped out the truck and was handcuffed and placed in the back of the patrole car he was driving.

54.    He said see you in a few I got a truck to search. After he conducted a search of the truck and waisted plaintiff's time, he locked it up and left it there. He then transported me to Northside holding for P.C.

55.    Upon arrival to Northside intake, I asked the policeman at the desk what was the charge that was holding me?

56. Sgt. Redmon told me I had a F.T.A. Warrant out of N.L.R. She then replied your bond is 500 dollars and I'm not going to release you on your own recognizance.

57. So I called my bail bondsman, and asked her to come get me A.S.A.P. I told her I had the 10% charge on me.

58. I spent the night, and early that morning Liz Frawley came and got me. Soon as I left the Northside intake, I called T. Free and notified her of the situation she told me to just hold on until she gets the police report.

59. Once T. Free got the police report is stated that Brunson Roberts during a traffic stop found to have warrant out of N.L.R. Warrant #38187 for F.T.A. on disorderly coduct and int. w/offc.

60. I then advised T. Free of the citation and told her that I wasn't supposed to be in court untill June 14, 2002. How can I have a failure to appear when the citation says appear on June 14, 2002 in court. I stated to T. Free this is pure harrassment and prejudice. She said she'll take care of it and held the paperwork.

61. This was a furtherance of conspiracy by T. Free and the State Agencies to injure the plaintiff in person, property, and deprive him of his rights under the U.S. Constitutional Amendments 4th, 5th, 8th, 13th, and 14th.

62. In a complaint to recover for conspiracy 42 U.S.C.S. § 1983 and 1985 a plaintiff must allege and prove conspiracy; (2) for purpose of depriving, directly or indireclty, person or class of persons of equal Protection of laws or equal privileges and immunities under laws 3) overt act in furtherance of object of

conspiracy; (4) also the plaintiff was injured in his personal property or (b) was deprived of having and exercising rights or privileges of a United States citizen. By NLRPD steady issuing fake warrants furthered their conspiracy with the help of T. Free concealing evidence which is illegal and disparity against the plaintiff, who is guaranteed all rights that fall under the U.S. Constitution.

63.    On June 1, 2002 I was pulled over by officer Scherrey on a traffic stop. Once I gave him my name he asked me to step out the car and turn around, I complied. I asked him what is the problem, he said you are going to jail, I said for what he replied a warrant. He knew where to find and harass me because of his daughter Amber Scherrey, we were partying together, at this time. She was employed at McCalister's Deli.

64.    He took the keys out of the ignition and went to the trunk. He found a 12-guage shotgun. He then towed the vehicle I was in to the impound yard.

65.    He transported me to P.C.D.F. and from there to detective station downtown. I remained silent so the detectives told Scherrey to take me back to P.C.D.F.

66.    I stayed in the county jail until I went in front of a judge to get a bond. Once I received a bond I bonded out.

67.    I then called T. Free once I was released from the county jail. I asked her to see what warrant for F.T.A. was issued for my arrest. She told me she would file for the Motion of Discovery and let me know.

68.    On June 3, 2002, I was sitting around a friend's house when NLR officer Abott who was sitting at the end of Marvin Street talking to a subject

named Michael Reeves. I told my friend to go get the video camera because he sat there for a while.

69.    NLR Officer Abott sat there for 20 to 30 minutes. Once I seen that NLR officer Abott was there only to harrass me I proceeded to my car to retrieve my cigarettes when NLR Officer Abott pulled up behind me and threw on his blue lights.

70.    He asked me for my registeration, I.D., and insurance. I said what are you doing I wasn't driving. He told me to give him what he wanted before he takes me to jail.

71.    As I reached for my insurance and registration, he said you still haven't learned to do what you were told and to keep your mouth shut. As I handed him everything he asked for; I picked up my cell phone and called T. Free.

72.    She told me to keep my cool and to call his supervisor. I told NLR officer Abott that my attorney was on the phone and would like to speak with you. Abott slammed the phone on the trunk of the car and said get out.

73.    He said I'm towing your car because your licence is suspended. Once I stepped out the car, he searched the car for drugs and weapons and didn't find anything. He then patted me down for weapons. That's when I told my friends to call his supervisor also call 911 and tell them to dispatch a Sgt. To the scene of the address we're at.

74.    NLR Officer Abott told me to sign the ticket he wrote, I refused and told him I'm not signing nothing. He replied you are going to learn to do what you

are told. He then arrested me by putting handcuffs on my wrist. Then he said now are you going to sign it. I told him no, take me to jail. Then the tow truck pulled up and started towing my car. That's when my mother pulled up and said sign the ticket.

75.   Right after that his Sgt. Pulled up and told him to explain what happened. When he got finished explaining, I explained my side that's when the Sgt. Told him to take the cuffs off of me and to take my car off the tow truck.

76.   On July 5, 2002 I was driving Stevie Moorehead's jeep to take Krystal Greer home. When I was stopped by NLR officer Wright.

77.   As he ran my name in NLR officer J. Rhodes #9466, Charles, Rhodes #0936 showed up. Theyspoke with NLR officer Wright for a second and then C. Rhodes came to my side and J. Rhodes went to the other side. She said look honey the famous Mr. Roberts.

78.   C. Rhodes said Mr. Roberts the famous Mr. Roberts. That's when officer Wright stepped out the car and said he has a warrant. That's when I was arrested by NLR Officer C. Rhodes.

79.   Ms. Greer was asked to step out of the vehicle, as she reached for her purse J. Rhodes told her she wanted to check her purse for weapons. She consented and J. Rhodes found some marijuana in her purse and arrested her.

80.   The NLR Offiers C. Rhodes placed us in separate cars. J. Rhodes was searching the jeep when C. Rhodes started assisting her on the search. They took out bags as they went through them.

81.    That's when R. Brock showed up on the scene. He spoke with the NLR officers for a moment and headed toward the patrol car I was being detained in. he said Mr. Roberts you're gonna be fucked after this. I said what does that mean? He replied you won't beat this charge after I'm finished with the evidence. You've got way enough times.

82.    Investigator Brock left for about 4-minutes looking in the jeep. Then he came back to the patrol car and opened the door by me and said where are the keys? I replied you don't need the keys to tow a car.

83.    That's when Inv. Brock said to the other officers, are the keys in the jeep? They replied no. Inv. Brock called NLR Officer C. Rhodes and said lets find the keys. C. Rhodes said this will be fun. C. Rhodes and Inv. Brock grabbed on a leg a piece and pulled me to the tip of the door.

84.    Inv. Brock grabbed my neck and pulled me out as C. Rhodes grabbed the handcuffs and said where are the keys? I said nothing out of fear; that's when officer C. Rhodes said I know how to make you say something, that's when he took the cuffs and turned them against my bone on my wrist.

85.    He put unbearable pain against my wrist bone to the point I was leaning over the trunk on my tip toes trying to ease the unbearable pain. Inv. Brock was going through my pockets and putting everything in my pockets on the trunk. As C. Rhodes held these cuffs in my wrist bone causing tremendous pain.

86.    As my wrist began to bleed Inv. Brock said ease up don't break his wrist. That's when C. Rhodes said he can take it he'll be alright. As Inv. Brock steady searched for the keys, I started yelling and crying from the pain so C.

Rhodes eased up. That's when Inv. Brock said we're gonna have to justify that referring to the blood on my wrist. Inv. Brock said get'em, throw him back in there.

87. So once he put me back in the patrol car, my wrist felt like it had been cut off by a jigsaw or chainsaw. That's when I started hypervenilating from the trauma. After that I started kicking the window to advise the officers that I need medical assistance.

88. The officers came to see what I was doing after I kicked the window a few more times. That's when I advised them to call the meds. 10-minutes passed and the meds showed up.

89. When they tried to help me the officer C. Rhodes told them something and they left as they were leaving I kicked the window out of desperation to try to get help.

90. As I sit there in torment and hyperventilating they processed most of the lab as I kicked the window for help. The NLR Officers did nothing for my medical needs. So they shackled my legs and closed the door. After an hour they transported me and Krystal Greer to the Northside intake.

91. Once we got to the intake I told the book in officer to take pictures of my wrist because of the brutality from the NLR police that I had endured. So NLR offier Wright called Sgt. Neff to take the pictures. Once he took the pictures he told the book in officer I'll be putting these pictures in the evidence for the case. But I never seen thse pictures, and would like them produced to justify the poice brutality that I endured.

92.    The next day I called T. Free and informed her of the situation. She said she would check on it and try to get me a bond since I had a F.T.A. I had no bond.

93.    On 07/11/02 I went to NLR District court. I was represented by T. Free. She explained to the Judge of NLR District Court that his officers picked me up on an invalid warrant for F.T.A. under CR-02-4013 when he realized the mistake of corruption, the Judge told Ms. Free that the NLR Prosecutor would pass file direct the new charges and dismiss the warrants. And it will be to Circuit Court's Prosecutor to throw the charges out. By doing that gave them time to change the police reports and conspire against plaintiff.

94.    He then released me and ran my bond with my other charges from 04/30/02 and he released my co-defendant Krystal Greer from PCDF on her own recognizance.

95.    I was not release because NLR put another F.T.A. Warrant in the computer, and PCDF could not release or would not release me without bonding out.

96.    After I found out I had a warrant in the computer I called T. Free to get me on the jail court dockett. She got me in front of the judge and he released me. Everytime I was released someone from NLRPD put FTA warrants in the computer to slow my release process down. I had to make a $500 dollar bond before I was released. These are the illegal tactics being used to further their conspiracy.

97.    I had a trial date on September 5, 2002 that I missed in Circuit Court. T. Free was representing me on that case. The case of CR-02-1866 that I recieved on April 17, 2002.

98.    Once I was apprehended and took in front of 5th Division Judge Proctor for the case to go to trial, he told me T. Free my attorney was released from the case and I would have to use a public defender.

99.    I was indicted by the F.B.I. on December 7, 2002. From the incident that occurred on April 30, 2002 referring back to 36-45 of this complaint. I was charged with conspiracy to distribute cocaine, and aidinig and abbetting in the distribution of cocaine.

100.    By the court's releasing T. Free my private attorney was a vindictive tactic that infrnged on the plaintiff's rights, because she knew more about the cases.

101.    The effective assistance of counsel is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and libert. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides will be lost, then justice will not be served to the defendant.

102.    Under Model Rules of Professional Conduct Rule 1:16: Declining or terminating representation under sec. 6 sub. Sec. (D) upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest such as giving reasonable notice to the client, allowing time for employement of another counse. She did not give me any notice or time

for employment of another counsel. She did not give me any notice or time to get another counsel, she did not repay any money paid to her for legal services. And she kept paperwork that was beneficial that prolonged this claim.

103.  This was a tactic schematically used by the courts to cost Mr. Roberts more money, and to take the effective assistance of counsel from Mr. Roberts to subject him to a long term prison conviction. I've been paying T. Free money since 2000 until 2002.  Then all of a sudden she releases her commitment to Mr. Roberts.

104.  The main goal is to get a long term conviction on Mr. Roberts because he was stereotyped as a drug dealer. By taking the defendse attorney away from the defendant, made it easier to get a long term conviction. Because the public defenders are less likely to fight for Mr. Roberts' freedom because they work under the color of State Law, and would protect the best interest of Pulaski County because they are for the public and also help hide the illegal tactis used by the officers. The prosecutor also filed the habitual offender on every charge out of spite to get me more time.

105.  On February 12, 2003 Mr. Roberts went to trial with a public defender named Gina Reynolds. In the proceeding of trial it was discovered that NLRPD withheld evidence from the Motion of Discovery.

~~available to the defense counsel were the material or other governmental personnel are subject the jurisdiction of the court.~~

107.   By NLRPD holding evidence from the state's discovery shows the Fedearl Courts what measures and tactics they would go through and to conspire to use cerain information to get a conviction on plaintiff.  By using illegal tactics and fake warrants.  This made the plaintiff's trial biased and denied plaintiff his due rights.

108.   By Mr. Roberts rights being violated under 4th, 5th, 6th, 9th, 13th, and 14th Amendments made the trials bias.  By me being layman I listened to Gina Reynolds who said it's just better to go on with trial.  She knew she could get me on the stand to self incriminate myself to the lesser charge.  Which violated specifically the 5th Amendment under the U.S. Constitution.

109.   Gina Reynolds knew that he plaintiff was going to Federal Court for plea and arraignment because I told her of the situation.  She and Jeroome Kearny insisted that it would be better on the point system in Federal Court to get the lesser charge.  So, Mr. Roberts by being lay to the law, got on the stand and incriminated himself to the lesser charge, which was the whole game plan to this conspiracy.

110.   Under Amendment (5) no person shall be compelled in <u>any</u> criminal case to be a witness against himself nor be deprived of life, liberty, or property without <u>due process</u> of law.  By the Court's putting in a lesser offense double jeopardized Mr. Roberts which he has been convicted of these crime illegitamately.

111.    In order to recover under 42 U.S.C. § 1983 and 1985 plaintiff must allege and prove 1) conspiracy for the purpose of depriving directly, or indirectly person or persons of equal protection of laws or equal privileges and immunities under laws, 2) overt act in furtherance of object of conspiracy; and that plaintiff was injured in his personal property or was deprived of having or exercising rights or privileges of a U.S. Citizen, 112 is an example of the furtherance.

112.    On February 13, 2003 Mr. Roberts went to jury trial for 3 F.T.A. the prosecutor H. Finkelstein would not let Mr. Roberts plead clean hands to the charge of the F.T.A. He took Mr. Roberts to a jury trial knowing there was no way Mr. Roberts would beat that charges consecutively.    Which shows the vindictiveness of the prosecutor to hurt the plaintiff.

113.    Two of the F.T.A. arose from the same date in court, there was two different numbers of cases on the court docket. Mr. Roberts was found guilty by a jury.    The jury said 3 years consecutive.    The judge gave me 9 years consecutive to my other time.

114.    Mr. Roberts asked G. Reynolds to file appeals in both cases.

115.    Mr. Roberts filed a complaint against G. Reynolds to the public dfenders commission on June 19, 2003.    The issues that the complaint stated was disparity against me.    Ex. Not investigating the warrants, and not being prepared or knowing what to do as the police infringed on the plaintiff's rights.

116.    On August 1, 2003 she replied and answered the complaint I filed against her.    She specifically stated there were no warrants used in the case of CR-02-1866 she knew the warrants were bogus.    And she still let her client be

prosecuted under the State law, which proves she knew about the conspiracy to incarcerate Mr. Robers; she tried to cover her tracks by saying there was no warrant used in this case. She also played her part in the conspiracy.

117. She represented me on case CR-02-2621 where the charges were dropped because it was not dope related, and the string of bogus warrants used by NLRPD. So she had full knowledge of the whole conspired act to deprive and incarcerate the plaintiff.

118. After I filed the complaint against G. Reynolds, the appellate counsel Clint Miller from the public defenders office releived himself from the same case of CR-02-1866 on October 10, 2003.

119. That left plaintiff without counsel for an important part of his conviction. Under 5th, 6th, and 14th Mr. Roberts' constitutional rights were violated be the counsel being relieved.

120. On October 15, 2003 Sue Newberry sent me a letter to Cummins Unit letiting me know that I had 30 days to file points for reversal. By me being lay to the law I did the best I could in filing points for reversal.

121. On June 30, 2004, the AR Court of Appeals affirmed my conviction of a Poss. Cont. Sub. I also filed a petition to review which was also denied. I've also proceeded under Rule 37 which also was denied in the F.T.A. case.

### CLAIMS FOR RELIEF

122. Mr. Robert's rights were violated under the U.S. Constitutional amendments 4th, 5th, 6th, 8th, 9th, 13th, and 14th.

123.    Malicious warrants, false arrest, false imprisonment, illegal searches, illegal seizures of property, vindictive prosecution, accessive use of force, falsifying documents, malicious mischief are all actions that arose from a conspirace to incarcerate Mr. Roberts dealing with; Pulaski County Sheriff, North Little Rock, P.D., Little Rock P.D., Sherwood P.D.

124.    Under the U.S. Constitutional amendments and under the Civil Rico Act, 1983 and 1985 are the reasons the legislation came up with these laws were to secure black americans from disparity and prejudice from certain people who have power to decide the fate of a person's life by their choices that they make against people.

125.    N.L.R.P.D. officers Det. J. Broach, B.T. Carmical, Det. Hunter, Inv. K. Jackson and patroleman Kersey all falsified documents to say Mr. Roberts had a outstanding warrant which resulted in his arrest. Due to the arrest officer Carmical searched the plaintiff and found the evidence that was used in trial, to get a conviction.

126.    ~~Under the A.R. of Cr. P. Rule 26 a warrant for arrest generally shall~~ ~~be the duty of a magistrate when a complaint is made the person is charged~~ ~~with the same is guilty of the offense the magistrate has personal knowledge~~ ~~from information given him or with a verify by affidavit there is a~~ ~~reasonable grounds for believing the charge.~~

127.    These officers of N.L.R.P.D. took it upon themselves to issue a warrant against the plaintiff. Officers Broach, Carmical, Hunter, Jackson, and Kersey falsified documents to justify their illegal search and seizure which

violated the plaintiff's constitutional rights under 4th, 5th, 8th, and the 14th amendment.

128. From their illegal actions, it led the plaintiff to be arrested and to have to have his personal property which was $1,580.00 U.S. currency to be taken. He also had to post a $15,975.00 dollar bond which cost the plaintiff $1,500.00 dollars for the plaintiff to be released. Then Mr. Roberts had to pay $2,000.00 dollars to Therese Free for representation on the case.

129. This situation led Mr. Roberts to a 14 year conviction, and a higher point system when he was given a federal sentence he was coerced and entrapped to take, which led the plaintiff to be convicted illegal. The N.L.R. officers also withheld evidence out of the case. The court transcript shall reflect and prove.

130. On 4/30/02 N.L.R. officer Dukes was supposedly dispatched to 205 Emily to assist the code officers G. Whitley and T. Wadley. All these officers of N.L.R. were called in reference to suspicious activity.

~~131. Under 16-10-200 civil liability under Rule 26.12 Search of vehicles under the 4th police station did not violate the 4th.~~ Then he falsified documents to say I was looking at the disabled van to arouse his suspicion. He stated in the police report I became angry once he asked me to exit the van. I never was in the van, and the dope was not mine.

132. Officer Dukes falsified documents to make it look like the drugs were mine. He did a pat down search on me for weapons and found nothing.

While he was patting me down that's when Chris McFadden tried to get rid of what he had.

133.    By officer Dukes writing the report the way he did he tried to justify the harrassment.  By the N.L.R. code enforcement officers T. Wadely and G. Whitley conspiring with N.L.R.P.D. made the illegal search and seizure seem to be justified.  These state officials violated the Rico Act title 18.  It cost Mr. Roberts $1,000.00 dollars to make bond, which led Mr. Roberts to have to pay T. Free more money.  It also led Mr. Roberts to an indictment which led to (150) months of Federal time for Mr. Roberts to serve.

134.    On 5-08-02, N.L.R.P.D. officer Gorea and code enforcement officer J. Nolan harrassed plaintiff and issued a citation to appear in court on 6-14-02.

135.    On 5-18-02, Mr. Roberts was pulled over coming home from work by N.L.R.P.D. officer Schoulst and arrested and taken to jail for a F.T.A. warrant. The same warrant from officer Gorea, which the date on the citation had not past making it impossible to failed to appear.

136.    ~~illegible~~. By the officer using F.T.A. to get an arrest on Mr. Roberts it justified there search and arrest of personal property, which is a custom in law that is long established. He violated the plaintiff's $4^{th}, 5^{th}, 8^{th}$, and 14th constitutional rights which furthered the conspiracy.

137.    On 6-01-02, I was pulled over by L.R.P.D. officer Scherrey and arrested for the same F.T.A. that Gorea issued me a citation on.  Scherrey did a inventory search of the vehicle by using the usage and custom of the F.T.A

warrant furthered the conspiracy to harrass and stereotype out of malice because no officer would in good faith issue that warrant, so this was an action resulting under the Rico Act.

138.    By Mr. Roberts getting search and arrested violated his $4^{th}, 5^{th}, 8^{th}$, and 14th amendments under the U.S. Constitution which is protected under 42 U.S.C. 1983 and 1985 under the 1871 Act passed in response placed primary emphasis upon criminal and civil penalties for conspiracies to deprive blacks of their constitutional rights.

139.    On June 3, 2002 Mr. Roberts was harrassed by N.L.R.P.D. officer Abott. This was pure harrassment caught on video tape by Plaintiff NLRPD officer Abott clearly working under State Law violated Mr. Roberts rights for the purpose of prejudice and deliberate violation of Mr. Roberts consitutional rights under the 4th, 5th, 8th, and 14th Amendments.

140.    On July 5, 2002 Mr. Roberts was pulled over by NLRPD officer Wright and arrested for a fake warrant which caused Det. Brock, C. Rhodes, and J. Rhodes to conspire against Plaintiff which subjected being inflicted with crule and unusual pain by abusive force. By the conspiracy that the NLRPD done to the plaintiff in this incident caused Mr. Roberts to have to hire K. Bell P.A. for representation; it also led plaintiff to a 10 year sentence under the 70% law which should only be given out by a grand jury under the U.S. Constitution Amendment 5. In case 02-3417 Mr. Roberts' co-defendant plead guilty to the charge before Mr. Roberts' trial. The co-defendant which is a white female was not charged under the 70% law which was done for the purpose of prejudice, malic, and

vindictive prosecution because the prosecutor would not drop the 70% law against Mr. Roberts who should have been cleared because the co-defendant plead guilty to the charge and got sentenced before my trial. He also helped referring to H. Finkelstein further the conspiracy under the RICO Act.

141. These are actions that violated Mr. Roberts' constitutional rights by using a custom of Municipal policy which led the plaintiff to have to plead guilty to a federal charge because of coercion and entrapment of conspiracy by State officials working under the color of state law. Mr. Roberts has been sentenced to 33 years in ADC; (150) months to serve federal. The state courts ran Mr. Roberts' charges consecutive 9, 14, and 10 which led to longer illegal imprisonment of the plaintiff. This was done out of pure malice to plaintiff. The plaintiff rights under the constitution has been violated under the 4th, 5th, 6th, 8th, 9th, 13th, and 14th Amenments.

## RELIEF REQUESTED

WHEREFORE, plaintiff requests that the court grant the following relief:

A)    Issue a declaratory Judgment stating that:

1.    The acts done by N.L.R.P.D., L.R.P.D. P.C.S. officers was illegal and went against policy by their deliberate actions to violate Mr. Roberts' Constitutional Rights.

2.    The actions of all the agencies demonstrated and or orchestrated conspiracy to incarcerate the plaintiff on long prison terms out of malice which violated plaintiff's constitutional rights specifically 4th, 5th, 6th, 8th, 9th, 13th, and 14th which are civil rights.

3.      That officers of NLR; B.T. Carmichael, K. Jackson, Inv. Ford, Kersey, Broach, and ~~Hunter~~ _Hunter_ used a custom which is persistent widespread, longstanding, and deeply emedded in municipal policy to persecute and prosecute the plaintiff.  They violated the plaintiff's 4th, 5th, 6th, 8th, 9th, 13th, and 14th amendments under the constitution.  By using fake warrants they also falsified documents and violated the RICO Act which led to prosecution to a 14-year sentence in ADC which led to a higher point system in federal court.  It also caused pain, ~~anguish~~ _anguish_ and 3,500 in expenses.

4.      These officers of NLR; T. Wadley, G. Whitley, D. Dukes personally and willfully falsified state official documents with deliberate intentions to entrap, malicously convict, and conspired with T.F.O. C. Vereen of the F.B.I. to cause an indictment to be issued against plaintiff that caused a situation of circumstances where plaintiff was entrapped and coerced to take a guilty plea in federal court in the Eastern District; causing a reaction that led to a (150) month sentence to be served.  That also these offices violated the RICO Act by furthering the conspiracy to incarcerate plaintiff o a crime he is innocent on, and these officers caused pain, anguish, and ailment to Mr. Roberts by abusing their official powers to racketeer which violated plaintiff's 4,5,8,9,13, and 14 constitutional rights and also his civil rights.

5.      That the actions of officer Gorea of NLRPD and officer J. Nolan of the code enforcement were done out of pure malic and to cause a reaction to further the conspiracy to harrass, entrap, and convict Mr. Roberts of a drug

crime because he was stereotyped and conspired upon by Pulaski County Agencies.

6.     That the action of NLRPD offier Schwulst was done to harrass, illegally search, false arrest, and false imprison Mr. Roberts. That the officer also falsified state official documents to justify his racketeering action against Mr. Roberts which caused pain, anguish, ailment, and approx. 100 dollars and he violated plaintiff constitutional rights specifically 4, 5, 8, 9, 13, 14 and civil rights act.

7.     That the action of LRPD officer J. Shcerrey constituted a furtherance in conspiracy to harm, cause pain, to cause false imprisonment, false arrest, to cause a cost of money for bonding, towing representation of counsel and caused ailment, pain, and anguish.   Also he violated Mr. Roberts constitutional rights specifically 4, 5, 8, 9, 13, 14, and the RICO Act.

8.     That the actions of NLRPD officer Abott were done out of pure harrassment, deliberate intentions, to hurt and cause stress, pain, money, ailment, illegal search and seizure, false arrest, and to further the conspiracy with total disregard that clearly established AR Law, policy, rules, and procedures to deprive the plaintiff of his secured and guaranteed rights under the U.S. Constitution specifically 4, 5, 8, 9, 13, 14, and participated in a RICO Act.

9.     That the actions of NLRPD officers; Inv. Brock, Wright, J. Rhodes, C. Rhodes, constituted a furtherance in conspiracy, to false arrest, false imprison, and to illegally convict plaintiff in state court. That their actions violated Mr. Roberts' constitutional rights by falsifying documents of the state and illegal

search and seizure due to the malicious warrants that were used as a custom and usage that is deeply embedded in municipal policy even if it is contrary to written policy or to the law. And that the NLRPD and the county of Pulaski be held liable for their illegal and malicious actions to deprive plaintiff of his civil rights to get an illegitimate conviction on plaintiff. Also that the defendants violated the RICO Act.

10.    That the actions of Gina Reynolds, Hugh Finkelstein, and Clint Miller were all for vindictive prosecution which furthered and completed the conspiracy; by G. Reynolds putting plaintiff on the stand to incriminate himself, to get a conviction on a charge that should have never made it to trial because of the fake warrant which made the search and seizure illegal and of bad faith. H. Finkelstein furhtered the conspiracy by prosecuting the ease and filing the habitual offenders act on plaintiff and making Mr. Roberts go to all jury trials to ask for consecutive sentences and charging Mr. Roberts with the 70% law and not charging the white co-defendant with the same actions. The actions of Clint Miller were done out of retaliation to deny due process of appeal because of a complaint filed on his co-worker who works under the color of state law for the public defenders officer at the time of the incident. Also that their actions vioalted the RICO Act and plaintiff's civil rights of due process.

11.    That the actions of federal agents J. Kearny and C. Vereen also helped in the furtherance of the conspiracy. J. Kearney who represented the plaintiff in the case, he coerced Mr. Roberts to plead guilty due to the entrapment by the State agencies of Pulaski County Mr. Roberts would have received 15 to

20 years under the 85% law if he would have took the case to trail. C. Vereer was the officer who said he could make the charges stick so the plaintiff felt intimidated by C. Vereen due to the illegal tactics that all the agencies were using for illegal convictions, and their actions violated the RICO Act and Civil Rights Acts to ~~constitute~~ violations of the 4th, 5th, 6th, 8th, 9th, 13th, and 14th Amendments of the Constitution.

12.    That the actions of T. Free violated Rule 1:16; (6)(1) under the Modern Rules of Professional Conduct which furthered the hurt and pain fo the plaintiff mostly by not turning over papers and refuding any advance payment made to her and not giving the defendant advance of termination.

B.

1. Issue an injunction ordering defendants who are named in this complaint to be subjected to a lie detector test for the purposes of justice and a racketeering investigation.

2.    To produce all the documents of this conspiracy to the plaintiff under federal rules of evidence depositions 1746, and 1733.

3.    Also expunge Mr. Roberts criminal record. Give an order to ~~restrain~~ restrain these agencies from the plaintiff and his mother.

4.    Grant plaintiff relief to vacate sentences under any means deemed to the courts law of the land, statutes, and codes.

5.    Issue the attorney general an injuction to investigate case.

C.    Award the plaintiff compensatory or smart money for damages in the following amount:

1.    $600,000 severally against N.L.R.P.D. for the physical and emotional injuries sustained as a result of conspiracy.

2.    $100,000 severally and against N.L.R.P.D. officer Abott for the physical and emotional injuries sustained as a result of mailce and conspiracy to illegal search, false arrest, and the violations of plaintiff's constitutional civil rights.

3.    $100,000 severally against N.L.R.P.D. officer Schwulst for the physical and emotional injuries sustained as a result of malice to false arrest, and illegally search plaintiff's vehicle which violated plaintiff's constitutional civil rights.

4.    $100,000 severally against N.L.R.P.D. officer C. Rhodes for the physical abuse and emotional injuries sustained as a result of malice to hurt plaintiff which violated plaintiff's constitutional civil rights.

5.    $3,500 against T. Free for the pain of conviction and violating rule 1:16 of Model Rules of Professional Conduct and for advanced payments made.

D.      Award Punitive Damages in the following amounts:

1.      $600,000 against N.L.R.P.D.

2.      $100,000 against Officer Abott of N.L.R.P.D.

3.      $100,000 against officer Schwulst of N.L.R.P.D.

4.      $100,000 against officer C. Rhodes of N.L.R.P.D.

5.      $3,500 against T. Free P.A.

E.      Grant such other relief as it may appear that plaintiff is entitled.

Date: 1 / 20 / 05

Respectfully Submitted,

Name: Brunson Roberts

Address:

Varner Unit,
P.O. BOX 600
Grady AR. 71644

## ALTERNATIVE VERSION OF DAMAGE DEMAND

D.      Award Compensatory Damages Jointly and Severally Against:

1.      Defendants; Abott, Schwults, and C. Rhodes for the malicious false arrest, falsifying of documents, illegal searches and seizures and detentions.

2.      Defendant N.L.R.P.D. for the conspiracy that led to illegal longterm imprisonment which caused emotional and physical injuries, resulting from a custom that is a usage under policy, denial of due process, violating the RICO Act, Civil Rights and the malign preparation of police reports and warrants which furthered the conspiracy step by step to entrap plaintiff until a (33) year conviction to ADC and a (150) month federal conviction was attained against plaintiff.

3.    Therese Free for advanced payments, pain and suffering.

E.

1.    Award Punitive damages against N.L.R.P.D. Abott, Schwulst, C. Rhodes and T. Free.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
_____ DIVISION

Brunson L. Roberts

**PLAINTIFF**

v.                        No. _____

P.C. Agencies ET. al

**DEFENDANT**

## MOTION FOR APPOINTMENT OF COUNSEL

Comes the Plaintiff, Brunson L. Roberts, proceeding without the assistance of counsel, and requests that the Court appoint counsel in this case for the following reasons:

1.    Plaintiff is proceeding pro se by necessity;

2.    Plaintiff has been unable to obtain counsel independently and is unable to pay the costs of this action (see Affidavit of Forma Pauperis);

3.    Plaintiff's knowledge of law and litigation is very limited and the issues to be presented are complex;

4.    Without the assistance of counsel, Plaintiff will be unable to meaningfully pursue his claims;

5.    The ends of justice would best be served in this case if counsel were appointed and Plaintiff's request is in good faith.

Respectfully submitted,

Brunson Roberts

Dated: 1/20/05

State of Arkansas )
                  ) §
County of Lincoln )

## Affidavit

I, Brunson Roberts after first being duly sworn, do hereby swear, depose and state that:) I am the plaintiff in the above entitled case. I make this affidavit in support of my motion for the appointment of counsel.

2.) The complaint in this case alleges that the plaintiff was subjected to a conspiracy that was initiated by NLRPD. individually and collectively falsified documents, issued fake warrants, maliciously arrested, illegally searched items, false imprisoned, physically abused, with malign intent. The plaintiff was arrested on several different occasions that stemmed from stereotyping and harrassment, and conspiracy to get plaintiff on one occasion to plead guilty on a federal charge, were plaintiff was coerced and entrapped to take unwillingly wich led plaintiff to (150) months and I also went to 3 state trials resulting in a 33 year conviction under the state, were the prosecutor H. Finkelstein and public defender G. Reynolds conspired to vindictively prosecute me in 5th division under the codes of the 10 laws of the land, wich were gave to the brethren in Genesis 1: 3-4 but had to be found with a compass because of precise measures dealing with the stars that shed light from the firmament. While in darkness the plaintiff was not honored under 1 Peter 2:17 under the 14th amendment. Plaintiff Brunson Roberts in this case is confronting and asking the Honorable to be Honored and given a degree of remedy under the truth of the light of simplicity, to is be cast back to the sea of life with my kind because the light now shines and the goat shall bear all the iniquities unto a land not inhabited; and he shall let go the goat. Behold, how good and how pleasant it is for brethren to dwell together in unity. People perish from lack of knowledge Hosea 4:6

3.) This is a complex case because it contains several different legal claims, with each claim involving conspiracy, individually and collectively furthered by state agencies.

4.) This case involves issues that require investigation because of the malice and the falsifying of legal documents onto the furtherance of conspiracy to get an illegitamate conviction.

5.) The plaintiff has demanded a jury trial.

6.) This case will require extensive discovery of documents to prove the conspiracy thoroughly, and effectively to justice, judge the just of a controversy arising out of the land.

7.) The testimony will be shown in conflict and depth, since the plaintiff is alleging conspiracy to deprive the plaintiff of rights to get an conviction to incarcerate, due to stereotyping and harrassment.

8.) The plaintiff only has a G.E.D. education and has no legal education to come to an agreement or litigation skills to resolve this controversy.

9.) The plaintiff is serving a sentence in punitive segregation. For this reason he has limited access to legal materials and has no ability to correctly pursue and investigate the facts of the case, for example getting necessary documentation to prevail in a remedy.

10.) As set forth in the Memorandum of Law submitted with this motion of these facts, along with the legal merit of the plaintiffs claims, support the appointment of counsel to represent the plaintiff.

Wherefore, the plaintiff's motion for appointment of counsel should be granted.

Brunson Roberts

Sworn to before me on this

6 day of January 2005

Sandra Benner

Notary Public              2-10-14

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL

### STATEMENT OF THE CASE

This is a civil rights case filed under 42 U.S.C. § 1983 and 1985 by a state and federal prisoner asserting claims for the unconstitutional malice to conspire to incarcerate, the denial of due process in state, federal and appeals courts, falsifying documents, illegal search and seizures, misuse of force, issuing fake warrants, vindictive prosecution, coercion and entrapment to take a plea in federal court, stereotyping, discrimination, prejudice, harrassment, illegal arrest, illegal bonds, illegal detention, cruel and unusual punishment that was schematically used throughout these agencies against plaintiff during the travel of life. The plaintiff seeks damages as to all claims and injunction to ensure proper justice and vacating of the sentences that will be held to serve and the vacating of the sentence being served.

### STATEMENT OF FACTS

The complaint alleges that the plaintiff was conspired upon because plaintiff was black and stereotyped as a drug dealer, and because plaintiff beat malicious charges that several Pulaski County agencies filed against plaintiff in Circuit Courts. Which sparked anger and revenge in the hearts of various state and federal officials to incarcerate Mr. Roberts on drug charges, by the issuing and falsifying of documents such as, fake warrants to get illegal searches and seizures and to falsly accuse plaintiff to be in possession of drugs on police reports. These officials conspired under the color of state law and federal law to entrap and proseucte plaintiff under illegal tactics that are a usage of municipal

policy that is so deeply embedded in law that it is widespread in the usage in Arkansas. For every action in physical and imortal law there is a reaction, the reaction led the plaintiff to a federal conviction of (150) monts and a (33) year state sentence which was given out of malign intent. The judge of 5th Division let T. Free which was the attorney at the time of the incident to plaintiff, be released from the case which was the safeguard of the plaintiff, which led plaintiff to be vindictively prosecuted by H. Finkelstein and G. Reynolds who both work in the same office and under the color of state law. Which subjected the plaintiff to be taken advantage of by the appeals courts and Clint Miller who also works in the capacity of state. He failed to file appeal saying it had no merit out of retaliation.

Because of a complaint filed against G. Reynolds. These acts has caused plaintiff to avail to be taken to a slaughter block to be unjustly prosecuted and slaughtered in the courts. This has caused plaintiff immortal pain, suffering and ailment.

## ARGUMENT
## THE COURT SHOULD APPOINT COUNSEL FOR THE PLAINTIFF

In deciding whether to appoint counsel for an indigent litigant, the court should consider "the factual compexity of the case" the ability of the indigent plaintiff to investigate facts, the existence of conflicting testimony, the ability of the indigent plaintiff to represent his claim and the complexity of the legal issues" Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991) (Citation was omitted) cert. Denied, 112 S.Ct. 1995 (1992). In addition, courts have suggested that the most important factor is whether the case appears to have merit. (Cooper v. A

Sargenti Co. Inc., 877 F.2d 170, 173 (2nd Cir. 1989) Each of those factors weighs in favor of appointing counsel for this case.

1.      Factual Complexity.  The plaintiff alleges conspiracy to incarcerate and to get a long term conviction under vindictive prosecution by the State.  The illegal tactic of entrapment and coercion to the plaintiff in the federal courts led the plaintiff to plead guilty or be confined for the rest and much of his natural life.  During the trial of 02-1866 it was discovered that N.L.R.P.D. officers held evidence out of the Motion of Discovery.  Which is a violation of plaintiff's rigthts.  The AR Appeal Courts denied plaintiff access to the transcript which can be obtained by a counsel of the courts.  This transcript will be needed to show that the N.L.R.P.D. conspired against plaintiff's rights and convicted plaintiff in Circuit Court.  N.L.R.P.D., P.C.S., L.R.P.D., Sherwood P.D. issued fake warrants that need to be produced for the plaintiff to prove the conspiracy, that they were issued against plaintiff for the reason of malice and harrassment.  Which is the proof of the furtherance of conspiracy.  Plaintiff cannot get these items due to the vindictive prosecution which caused plaintiff to be incarcerated.  Moore v. Mabus, 976 F.2d 268, 272 (5th Cir. 1992); Jackson v. County of McLean, 953 F.2d 1070, 1073, (7th Cir. 1992); Tucker v. Randall, 948 F.2d 388, 392 (7th Cir. 1991).

2.      The plaintiff's ability to investigate.  The plaintiff is locked up in punitive segreagation and has no ability to investigate the facts.  This is a very complex case that needs to be handled under the hands of a wise counsel who has a blind fold over his eyes when it comes to justice for the plaintiff.  The plaintiff is limited on resources to properly litigate this complex case and under

the 5th Amendment the court would be giving the plaintiff what is due for the processing of this complex case of conspiracy against local state agencies which is a crime under the RICO Act.  See Tucker v. Dickey, 613 F.Supp. 1124, 1133-34 (W.D. Wis. 1985) (Need for Discovery concerning the identity of files, officer reports, warrants, transcripts from State and Federal Courts.)

3.     Conflicting testimony.   The plaintiff's account of conspiracy to incarcerate on drug charges is squarely upon the plaintiff to prove against the offiers who conspired under the RICO Act to imprison the plaintiff.  The aspect of this case is complex and will be determined by evidence and testimony.  The existence of these aspects of issues supports the appointment of counsel. Gatson v. Coughlin, 679 F.Supp. 270, 273 (W.D.N.Y. 1988)

4.     The ability of the indigent to present his claim.  The plaintiff is an indigent prisoner with no legal training, a true factor that supports the appointment of counsel.  Whisenant v. Yaum, 739 F.2d 160, 163 (4th Cir. 1984) in addition he is confined to segregation with very limited access to legal materials.  Rayes v. Johnson, 969 F.2d 700, 703, -04 (8th Cir. 1992) citing lack of ready access to the Law Library as a factor to support appointment of counsel.

5.     Legal complexity.  Due to the large number of defendants in this case, presents complex legal issues of determining which defendants were the actual initiators of this conspired act to incarcerate plaintiff on drug charges and who is involved in the constitutional violations to be held liable.  In addition, the plaintiff has asked for a jury trial which requires much greater legal skill than plaintiff has or can develop in time for trial.  See Abdullah v. Gunter, 949 F.2d

1032, 1036 (8th Cir. 1991) (citing jury demand as factor for supporting appointment of counsel.)

6.    Merit of the case.  The plaintiff's allegations, will prove, to the courts that defendants acting under the color of state law and federal law violated the plaintiff's constitutional rights by conspiring to incarcerate.  Which plaintiff also seeks an investigation under the RICO Act because of the defendants' actions and by them using a custom of municipal policy.  The plaintiff has already been denied due process all around thelight of justice of the system.  Ponte v. Real, 471 U.S. 491, 497, 105 S.C.t. 2192 (1985); Dyson v. Kocik, 689 F.2d 466, 467-483 (3rd Cir. 1982) This is a very complex case but can be proved very very easily.

## CONCLUSION

For the foregoing reasons, the court should grant the plaintiff's motion and appoint counsel in this complex case for the justice and liberty of the plaintiff.

Date: _/ ,20 ,05_

Name: _Brunson Roberts_
Varner Unit
P.O. Box 600
Grady, Arkansas 71644-0600

Subscribed and Sworn to Before me a Notary Public on this

Date _Jan. 18, 2005_

_James Barnes_
NOTARY PUBLIC

_2-10-2015_
My Commission Expires